208 N.J. Super. 372 (1986)
506 A.2d 29
LEANDER BROWN, PLAINTIFF-APPELLANT,
v.
KENNETH BROWN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted February 4, 1986.
Decided February 28, 1986.
*374 Before Judges PRESSLER, DREIER and BILDER.
Carolyn E. Arch, attorney for appellant.
Kenneth H. Williams, attorney for respondent.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal raises the question of whether the entire controversy doctrine embraces constituent causes of action which arise during the pendency of the litigation. The issue is before us in the context of matrimonial litigation. The specific question is whether the victim of a marital tort committed during the pendency of her divorce action is precluded from later pursuing the tort claim if she has not raised or attempted to raise it in that action. Although we conclude that the entire controversy doctrine ordinarily requires joinder or attempted joinder of constituent causes arising pendente lite, we are also satisfied that in exceptional cases there may be countervailing equitable considerations which would render application of that doctrine unfair. This is such a case. Accordingly, we reverse the summary judgment appealed from, which dismissed plaintiff's tort complaint against her former husband.
Plaintiff Leander Brown filed a divorce complaint against defendant Kenneth A. Brown on March 27, 1981, seeking to dissolve their nearly 22-year marriage on the ground of extreme cruelty. Defendant counterclaimed, seeking a divorce on the same ground. Each also sought equitable distribution of the apparently substantial marital estate which included residences in Maplewood, New Jersey, and Oak Bluffs, Massachusetts; real property in Newark, New Jersey; and substantial personal property. The record on this appeal includes no documents or pleadings in the divorce action other than the final *375 judgment and a later consent order, but it is represented to us that the litigation followed a typical pretrial discovery and motion pattern.
By September 1981, the parties were already living separate and apart, plaintiff apparently having continued to reside in the Maplewood residence. Insofar as we can determine from the record, sometime early in September defendant's brother appealed to plaintiff for assistance in caring for defendant's mother, who was ill and whose own husband had just been hospitalized. Plaintiff, accompanied by one of the emancipated daughters of the marriage, went to her mother-in-law's home in the Bronx and stayed there several days rendering such help as she could. On September 12, after visiting her father-in-law in the hospital, plaintiff and her daughter returned to the mother-in-law's home to retrieve their personal belongings as they were intending then to return to New Jersey. It is plaintiff's claim that upon her arrival, defendant, who had apparently come to his parents' home to visit his mother, refused her admittance and then assaulted her, twisting her arm and pushing her to the ground. She further alleged that as a result of the assault, she sustained a chronic cervical strain and aggravation of her existing muscular dystrophy. She required emergency medical care, eventual hospitalization and extended treatment and physical therapy.
According to plaintiff's certification filed in this action, she was preoccupied with her physical problems during the three months following the assault, but in December 1981 she discussed the incident with her divorce attorney. She claims that he then told her that the divorce action was scheduled for trial on January 6, 1982, and that "he further advised me that because the assault occurred in another state, the question of the proper forum required research, which he declined to do, and further that he would not represent me in my claims for personal injuries and damages." Apparently, plaintiff saw no alternative to proceeding with the divorce trial as scheduled and as the issues therein were then postured.
*376 Accordingly, the trial of the divorce action, including all property claims, proceeded on the scheduled January 6th date and apparently resulted in an oral disposition granting each party a divorce from the other on extreme cruelty grounds and directing the distribution of the marital assets. The oral disposition was not, however, reduced to judgment until April 9, 1982. It appears that the delay was occasioned by the necessity for appraisals and by the parties' apparent undertaking at trial to attempt the amicable resolution of outstanding issues respecting the distribution of various specific marital assets. It further appears that not all of these matters had been accomplished even at the time the final judgment was entered and that proceedings to clarify, implement and modify the judgment continued at least through October 1982, when a consent order was entered fixing values of some of the real property and establishing the respective rights of the parties to other parcels. Plaintiff was represented throughout these proceedings by her original attorneys.
In the meantime, in March 1982, between the date of the divorce trial and the date the judgment was formally entered, plaintiff consulted her present attorney respecting her tort claim. The complaint asserting that claim was filed and served in September 1982. Defendant filed his answer on October 4, 1982, during the pendency of the post-judgment proceedings in the divorce action and prior to the date of entry of the concluding consent order therein. A tortuous procedural course then ensued which finally resulted in this dismissal of the tort claim two-and-a-half years later.
The parties engaged in pretrial discovery during the first 18 months of the pendency of the tort action. The case was scheduled for trial on March 5, 1984 but was adjourned on motion of plaintiff's attorney because of her peremptory criminal trial commitments. By some mishap, apparently resulting from communication problems between the court and counsel, the matter was again listed on the daily call for March 22, 1984. Counsel failed to appear since she was unaware of the listing, *377 and the action was dismissed. It was, however, reinstated on May 16, 1984, on plaintiff's application on notice to defendant and over his apparent objection.
The case did not, however, then proceed to trial since shortly after the reinstatement order, defendant filed a petition with the United States Bankruptcy Court pursuant to Chapter 13 of the federal bankruptcy statute, 11 U.S.C.A. § 1301, et seq. (wage-earner's plan). The filing of that petition resulted in the usual order of the bankruptcy court staying all state court proceedings, including this action, which was then placed on the inactive list. Plaintiff, inferring from the defendant's filed bankruptcy plan that the sole purpose of the petition was to obtain a discharge of any obligation which might ensue from this action, moved in the bankruptcy court for an order declaring that obligation to be non-dischargeable. Plaintiff was apparently correct in her inference since defendant's response to her motion was the filing of an application in the bankruptcy court in November 1984 withdrawing his petition. Consequently, on plaintiff's motion this action was restored to the active trial list in December 1984. At that point, instead of proceeding to trial defendant applied for further discovery and obtained an order on December 24, 1984, over plaintiff's objection, requiring her to submit to oral depositions and to a physical and mental examination by a physician on defendant's behalf. That order further directed that trial commence on January 10, 1985. On January 3, 1985 defendant filed this motion for summary judgment seeking dismissal of the complaint on the ground that it was barred by the entire controversy doctrine. The trial court, relying on Tevis v. Tevis, 79 N.J. 422 (1979), granted the motion. Plaintiff appeals. We reverse.
The entire controversy doctrine, which has been the subject of considerable judicial attention in recent years, is a preclusionary principle intended to prevent the fractionalization of litigation by requiring all claims between the same parties arising out of or relating to the same transactional circumstances *378 to be joined in a single action. The effect of the doctrine is to preclude a party from withholding from the action for separate and later litigation a constituent component of the controversy even where that component is a separate and independently cognizable cause of action. See, e.g., Crispin v. Volkswagenwerk, A.G., 96 N.J. 336 (1984); Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550 (1981); Falcone v. Middlesex County Med. Soc., 47 N.J. 92 (1966); Ajamian v. Schlanger, 14 N.J. 483 (1954), cert. den., 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 659 (1954); Jones v. Warren, 199 N.J. Super. 2 (App. Div. 1985), modified, 98 N.J. 442 (1985); Mori v. Hartz Mountain Development Corp., 193 N.J. Super. 47 (App.Div. 1983); Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277 (App.Div. 1977), certif. den., 75 N.J. 528 (1977). See also R. 4:27-1(b). The Supreme Court in dictum[1] in Tevis v. Tevis, supra, applied the entire controversy doctrine to marital actions, noting that an intentional tort committed by one spouse against another is ordinarily a constituent element of their divorce action. The court reasoned that "[a] wife's civil claims for monetary compensation against her husband, and his contingent liability therefor, would seem a relevant circumstance affecting the parties' financial status in the context of a matrimonial controversy." 79 N.J. at 433-434. It concluded:
Since the circumstances of the marital tort and its potential for money damages were relevant in the matrimonial proceedings, the claim should not have been held in abeyance; it should, under the "single controversy" doctrine have been presented in conjunction with ... [the divorce action] as part of the overall dispute between the parties in order to lay at rest all their legal differences in one proceeding and avoid the prolongation and fractionalization of litigation. [Id. at 434]
*379 Had the marital tort here occurred prior to the institution of the divorce action, as in Tevis, there would be no question of plaintiff's obligation to have raised it as a separate claim in her subsequently filed divorce action. Similarly, if the tort cause of action had accrued after the termination of the divorce action, there would be no question respecting its continued viability. See Ayers v. Jackson Tp., 202 N.J. Super. 106, 124-125 (App. Div. 1985), certif. granted, 102 N.J. 306 (1985); Devlin v. Johns-Manville Corp., 202 N.J. Super. 556, 569-570 (Law Div. 1985). Here, the divorce action had been pending for some months prior to the commission of the tort and the trial date was drawing near. The question then is whether the entire controversy doctrine extends to constituent claims which arise during the pendency of the action. The question is difficult because it implicates considerations of due process, practice, pleading and judicial administration which may transcend and conflict with the underlying policies of the entire controversy doctrine.
To begin with, the point of the entire controversy doctrine is, as we said in Wm. Blanchard Co., supra, to require parties in a single litigation "to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions...." 150 N.J. Super. at 294. Leaving out of the litigation a claim which belongs in that bundle and saving it for another day has precisely the same consequences whether the claim arose prior to institution of the action or after it. In either case, the judgment rendered in the action will not be conclusive of the entire controversy, and the consequent risk of future litigation finally to resolve it cannot but gravely undermine all that the parties have attempted to accomplish in the original litigation and frustrate their expenditure of all the resources, both economic and noneconomic, devoted to achieving a judgment.
There are, however, evident differences between the previously arising claim and the subsequently arising one. Where the claim predates the filing of the complaint or the counterclaim, the pleader is in sole control. He can frame his affirmative *380 claims as comprehensively as appropriate, R. 4:27-1(a), and therefore can fairly be burdened by the preclusionary consequence of omission. The assertion of a subsequently arising claim, however, requires the filing of a supplemental pleading for which leave of court must be sought. See R. 4:9-4, providing that
[o]n motion by a party the court may, upon reasonable notice and on terms, permit him to serve a supplemental pleading setting forth transactions or occurrences which took place after the date of the pleading sought to be supplemented. A motion for leave to file a supplemental pleading shall have annexed thereto a copy of the proposed pleading. The court may require the opposing party to plead thereto, specifying in its order the time therefore.
And see R. 4:7-3 (counterclaim maturing or acquired after pleading).
The significance of having to seek leave to file a supplemental pleading lies, of course, in the policy reasons for submitting that question to judicial discretion in the first instance. Ordinarily judicial discretion should be exercised in favor of permitting the filing of germane supplemental pleadings. See generally 2 Schnitzer & Wildstein, New Jersey Rules Service, A IV-409 (1954). Clearly, adjudication of the controversy without consideration of the supplemental claim may, depending on the circumstances, frustrate any practical utility of the adjudication, result in a duplicative and wasteful second litigation, and subject the litigants and the court to all of the burdens of successive litigation which the entire controversy doctrine was intended to avoid without affording any offsetting legitimate advantages to anyone. Indeed, the relationship between supplemental pleading and the entire controversy doctrine was perceived by Schnitzer & Wildstein, supra, who pointed out that if a germane supplemental pleading were not allowed, "the policy which favors the use of a single action to resolve all existing controversies between the parties is impaired, if not frustrated." Ibid.
But R. 4:9-4, by requiring leave, implicitly recognizes that there may be exceptional circumstances in which the filing of a supplemental pleading should not be allowed. This is so since *381 clearly, no matter how germane the subject matter of the supplemental pleading, it may nevertheless, on balance, have a greater potential for vexation and for prejudice to the parties if joined with the original action than if reserved for later and separate action. For example, if the supplemental pleading were filed late in the litigation and required a renewal of discovery, permitting assertion of that claim in the action could result in untenable delay of trial of the issues as already framed, which might ultimately be more costly than reserving the supplemental claim for another day. It might also be that in the context of the controversy as a whole, the supplemental claim would be sufficiently independent or collateral so as to favor its omission from the first action in the interests of expedition and avoidance of undue complexity of the litigation. And it might be that determination of the issues as framed will be wholly dispositive of and unaffected by the supplemental claim, thus warranting its reservation in the interests of economy.
The evident dilemma is that in terms of the purpose and policy of the entire controversy doctrine, there is no conceptual difference between joinder of constituent claims at the outset of the litigation and joinder during its pendency. If failure of joinder in the first instance is deemed a waiver of the unjoined claim, then so should failure of joinder of the subsequently arising claim. Nevertheless, there may be, as we have noted, such practical difficulties attendant upon prosecuting a subsequent claim in pending litigation that insisting upon doing so would sacrifice rather than achieve expedition and economy and would compromise the fundamental due-process right of a party to a fair opportunity to present his claim.
We are satisfied that these competing concerns are nevertheless susceptible to fair accommodation. The first predicate of such an accommodation is that the court, rather than a litigant acting unilaterally, must make the determination of whether the supplementary claim is to be joined or reserved. The consequence of this predicate is that if, during the pendency of *382 the litigation, a claim arises which is part of the entire controversy, the claimant must seek leave pursuant to R. 4:9-4 to file a supplemental pleading. There may be sound reason for reserving the claim grounded on such factors as its nature in the context of the litigation as a whole, the time when the claim arises as measured by the stage of the litigation, the potential effect of joinder on the orderly and expeditious progress of the action, and the practical meaningfulness of an adjudication rendered without regard to the claim. The party asserting the claim may therefore seek the further relief of an order permitting the claim to be subsequently raised in later litigation. The opposing party may also seek that relief in responding to the motion, and the court may sua sponte opt for that alternative in considering the motion. The point is that unless a party at least attempts to raise the claim by a supplemental pleading, the court cannot determine whether the interests of substantial justice to the litigants in that controversy are best served by joinder or reservation. Nor can it ascertain whether the imposition of terms respecting prosecution of a reserved claim is necessary or appropriate for the parties' protection.
We therefore hold that a party whose constituent claim arises during the pendency of the action risks its loss unless he apprises the court and his adversary of its existence and submits to judicial discretion the determination of whether it should be joined in that action or reserved. See, e.g., Zaromb v. Borucka, 166 N.J. Super. 22 (App.Div. 1979) (constituent claim arising during the litigation is not barred by the entire controversy doctrine from subsequent suit when a motion made in the original action for leave to file a supplemental pleading has been denied). And see Restatement, Judgments 2d, § 26(1)(b) at 233-234 (1982), exempting from the application of the general rule against splitting of claims those constituent claims as to which "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action."
*383 While these principles would ordinarily have required plaintiff to have sought leave to file a supplemental complaint in the divorce action raising the marital tort claim, we nevertheless conclude that under the circumstances of this case, she should not be barred from litigating that claim in this subsequent action. First, this tort claim is sufficiently distinct and independent from the cause of action for divorce and equitable distribution to permit separate adjudication without prejudicing the integrity of those prior adjudications. Indeed, there is apparently some uncertainty as to how a marital tort claim joined with a traditional divorce action should be tried. See, e.g., Davis v. Davis, 182 N.J. Super. 397, 399 (Ch.Div. 1981) (question of whether the tort claim should ordinarily be disposed of prior to, during or upon completion of the divorce hearing is a problem still requiring resolution).
More significant, however, is the litigation history here. First plaintiff's matrimonial lawyer refused to raise the tort claim in the divorce action, leaving her in an obvious dilemma. Under that circumstance, her choice of proceeding with the divorce action rather than seeking other legal advice and thereby prejudicing the conclusion of the divorce action was not unreasonable. Moreover, defendant continued to prosecute equitable distribution applications in the divorce action after he was served with and answered the tort complaint, without in any way seeking to consolidate it with the open equitable distribution issues, moving to dismiss it, or in any other way attempting to raise a preclusionary defense. Indeed, prior to the summary judgment motion which he made virtually on the eve of trial, he had vigorously defended the action over the course of a two-and-a-half year period, resorting to such maneuvers as his abortive attempt to relieve himself of the potential burden of the tort claim in the bankruptcy court and his eleventh-hour discovery motions. Thus, by the time he filed the belated summary judgment motion, defendant had already substantially assumed the burdens of successive litigation and had *384 encouraged plaintiff herself to continue in the costly prosecution thereof.
Under these circumstances defendant waived the defense of preclusion, which, we are satisfied, is an affirmative defense required to be pleaded. See R. 4:5-4, which includes res judicata in its illustrative list of affirmative defenses. It is well settled that an affirmative defense is waived if not pleaded or otherwise timely raised. See R. 4:6-7. And see Douglas v. Harris, 35 N.J. 270, 281 (1961); Winans-Carter Corporation v. Jay & Benisch, 107 N.J. Super. 268, 272-273 (App.Div. 1969). It is also well settled that a party's conduct may estop him from relying on an affirmative defense. See Zaccardi v. Becker, 88 N.J. 245, 256-257 (1982). We further point out that section 26(1)(a) of the Restatement, Judgments 2d, supra, also exempts from the claim-splitting bar those claims as to which "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein."[2] We regard defendant's conduct here, under all the *385 circumstances, as constituting just such an acquiescence. It was, therefore, eminently unfair for this action to be dismissed.
The summary judgment dismissing the complaint is reversed, and the matter is remanded for trial.
NOTES
[1] The ratio decidendi of Tevis was the bar of the statute of limitations of N.J.S.A. 2A:14-2. The complaint based on the tort was not only filed after the conclusion of the divorce action but also 26 months after commission of the tort. The primary question in Tevis was whether plaintiff was entitled to a deferred accrual date because of intervening developments in the law respecting the abolition of interspousal immunity as a defense to an intentional tort. The court answered this question in the negative. 79 N.J. at 430-432.
[2] Section 26(1) of the Restatement, Judgments 2d, reads in full as follows:

(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
(a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or
(b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or
(c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; or
(d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim; or
(e) For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course; or
(f) It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.
We note that paragraph (f) might also here apply. We further point out that the mere fact that the constituent claim occurred during the pendency of the litigation is not by itself an "extraordinary reason" overcoming the policies of preclusion. As we have here held, to the extent its adjudication in the pending action may, under the circumstances, provide the basis for an extraordinary reason, the court in the first litigation can deal with the problem by expressly permitting a reservation of the claim.