253 N.J. Super. 531 (1992)
602 A.2d 741
MARCIA M. GUGLIELMO, PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
THOMAS M. GUGLIELMO, DEFENDANT-APPELLANT-CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1991.
Decided January 21, 1992.
*535 Before Judges DREIER, GRUCCIO and BROCHIN.
Ozzard, Wharton, Rizzolo, Klein, Mauro, Saud & Hogan, attorneys for appellant-cross-respondent (S. Phillip Klein, of counsel and on the brief).
Roth & Beeman, attorneys for respondent-cross-appellant (Roger Beeman, of counsel and on the brief).
The opinion of the court was delivered by GRUCCIO, J.A.D.
The subject of this appeal is a property settlement agreement and the circumstances surrounding its construction. The effect of the agreement is an unconscionable one, and thus it is subject to reformation. We have fully reviewed the facts on record and affirm the orders of Judge Herr including her action *536 on previous orders in this matter. See Johnson v. Cyklop, 220 N.J. Super. 250, 531 A.2d 1078 (App.Div. 1987). The pertinent facts are as follows.
Plaintiff Marcia M. Guglielmo and Thomas M. Guglielmo were divorced by a judgment entered on March 11, 1982, which included a property settlement agreement concerning custody, child support, equitable distribution and attorney's fees. On June 30, 1983, a single-page amendment to the agreement provided for sale of the marital residence, division of the net proceeds between the parties and the assumption of outstanding financial obligations by defendant. In October 1988, plaintiff moved for post-judgment relief concerning support arrearages, educational expenses and an increase in child support. In addition, plaintiff sought a reformation of the agreement based upon allegations of mistake, overreaching and fraud, proportional allocation of defendant's Individual Retirement Account (IRA), return of monies which plaintiff lent to defendant after the divorce and other relief. Defendant cross-moved for the assessment of $32,402 against plaintiff which he claims resulted from her delay in selling the marital home.
The initial motion judge (not Judge Herr) determined the matter based on filed certifications and oral argument but without taking testimony. He concluded that plaintiff was not entitled to any share of defendant's IRA because the parties' agreement did not mention the IRA, plaintiff was represented by counsel at the time of the execution of the agreement and the agreement contained a general release clause. The judge found that notwithstanding the fact that plaintiff's attorney was obtained by defendant and was defendant's relative, neither the agreement nor the later amendment were invalid. He also concluded that plaintiff's personal loan to defendant after the divorce (to enable him to go on a honeymoon with his new wife) was not a part of the matrimonial litigation and that plaintiff would have to bring a separate cause of action for those monies. The judge further found that plaintiff delayed the sale and closing of the marital home. As to the support and *537 tuition expenses, he concluded that as long as defendant was liable for tuition expenses, he was not liable for room and board at college because he was paying support. He found that no interest was due plaintiff on the monies defendant owed her from the proceeds of the marital home. At a subsequent hearing, he reaffirmed these rulings.
Judge Herr was then assigned to the case and executed an order which preliminarily denied plaintiff's request to amend or alter the orders previously entered; determined that defendant was in arrears on child support, which she ordered paid through the Morris County Probation Department at the rate of $100 per month; ordered a plenary hearing on defendant's claim of a credit against arrearages; ordered discovery, including inquiry into the disposition of all income, expenses and assets; and denied plaintiff's request to direct immediate payment of arrearages. The judge reserved decision on the issues of modification of the agreement, increase in child support, alimony, life insurance, fixing a date for defendant to pay plaintiff monies due on a December 9, 1988 order, including interest, and award of counsel fees.
Following a Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980) hearing, Judge Herr issued a letter opinion in which she denied defendant's request that $1,844 of college expenses paid by him in 1988 be credited against 1988 child support arrearages; increased to $200 per week defendant's obligation to support the unemancipated daughters of the marriage; after August 1, 1989, reduced to $112 per week defendant's child support obligation by virtue of the emancipation of the older daughter; awarded permanent alimony to plaintiff in the amount of $800 per month commencing November 23, 1988, to be made through the Morris County Probation Department; ordered defendant to pay on or before December 11, 1989, the balance due plaintiff on the sale of the marital home in the amount of $7,799, together with legal interest from December 9, 1988; ordered defendant to execute a release in favor of plaintiff to permit her to obtain, directly from the insurer on an ongoing basis, *538 proof of the insurance coverage required by the final judgment of divorce; and reserved judgment on the issue of counsel fees.
On April 18, 1990, Judge Herr determined defendant to be in violation of litigant's rights for failure to comply with the child support provisions of the January 16, 1990 order. She ordered defendant to pay $20,257.48 in child support and alimony arrearages and interest of $652.26 for late payment of equitable distribution; to protect litigant's rights, ordered that judgment be entered for the full amount of arrearages and interest, and issued an income withholding order against defendant's income which provides for the withholding and payment of current child support and alimony, together with an additional sum in the amount of $500 to reduce arrearages until the judgment is satisfied; denied a stay pending appeal; and granted plaintiff's attorney's fees of $1,066 on the litigant's rights application. On June 29, 1990, she ordered counsel fees of $14,500 to be paid by defendant to plaintiff.
On appeal, defendant attacks the provisions of the January 16, 1990 order increasing his support obligation for the two unemancipated daughters from $100 per week to $200 per week while they both remained unemancipated and setting the support obligation at $112 per week for the one remaining unemancipated daughter and awarding plaintiff $800 per month permanent alimony commencing November 23, 1988. Defendant also challenges the court's award of $14,500 counsel fees to plaintiff by the order of June 29, 1990. He claims a credit of $1,844 which he alleges he overpaid in child support; appeals the denial of his application for payment from plaintiff for home maintenance during a period when he claims she delayed the sale of the marital home; and finally, appeals the denial of his attorney's fees.
Plaintiff's cross-appeal challenges the original denial of her request for various items of support, counsel fees, a Lepis hearing to establish changed circumstances warranting the *539 allowance of alimony and modification of the separation agreement.
The facts relevant to this case are as follows. The parties were married for 17 years. Plaintiff was employed as a secretary until 1965. At defendant's request, plaintiff left the work force to become a full-time homemaker and mother. The parties enjoyed an upper-middle-class lifestyle and lived in a four-bedroom custom-built home on two acres of property with a running stream located in an affluent neighborhood. They owned a Lincoln, a 280Z and a jeep. They shopped at major department stores and vacationed in Bermuda, Nassau, Acapulco and Florida.
When plaintiff first approached defendant for a divorce, defendant suggested using his cousin as their attorney. At the first meeting of the parties with this attorney, counsel advised plaintiff to draw up a "rough budget" of her expenses. Apparently, plaintiff was unsophisticated in these matters and told her attorney that she never handled money. As a result, it appears that the budget drawn by plaintiff was vastly inadequate to support herself and her children.
Prior to the sale of the marital home defendant fully supported plaintiff and the children of the marriage. Thereafter, defendant paid child support to plaintiff in the amount of $50 per child per week. Following the divorce, due to defendant's meager payments, plaintiff and the three children moved into a two-bedroom home. Plaintiff and one of her children shared a bedroom; the other two children shared a bedroom. Prior to the divorce, each child had her own bedroom. In order to make ends meet, the children obtained part-time employment. Indeed, two of the children were only 14 years of age when they began working. On at least one occasion the children were in need of winter coats, but defendant told plaintiff to buy them with the support money.
The agreement provided that the child support figure would be reviewed by the parties one year from the date the house *540 was sold. Although plaintiff approached defendant on numerous occasions and stated that the amount of support was inadequate, defendant posited that was all he could afford. Plaintiff accepted his statement as true because she said there was no money to seek the advice of counsel.
At the time of the divorce in 1980, plaintiff earned approximately $9,000 per year. Defendant, at the time of the divorce, earned approximately $40,000 per year. In 1988, defendant earned approximately $100,000 per year. Early in 1984, defendant purchased a townhouse for $180,000, which was listed for approximately $250,000 in 1989. On October 1, 1988, defendant entered into a contract to purchase a new home for $350,000. He took occupancy in May 1989 with his second wife and their young child. Defendant drives a Porsche and his 1988 salary was $100,918. Defendant receives reimbursement for automobile expenses from his employer and has no car payments, yet claims to have transportation expenses in excess of plaintiff's. Defendant's anticipated budget indicates that he will pay more for his shelter ($3,656 a month) than plaintiff's entire monthly budget of $2,411.
In 1987, two of the parties' children were accepted at Stockton State College where tuition averaged $6,200 per year, per student. Defendant contended that he should only pay $4,000 per child each year. Some student aid was granted to the children through tuition aid grants, loans and work study. Defendant paid the balance of the tuition, board, room, books and fees for the first semester. However, he stopped all child support payments in July 1988.
Defendant asserts that the agreement should be imposed in light of its consensual nature and the fact that both parties were fairly represented by counsel at the time of its execution.
The agreement in pertinent part provides:
1) MAINTENANCE AND SUPPORT  The parties agree that the Husband shall support the Wife, Children and the Marital House in White House Station, New Jersey until such time as the house can be put on the market and sold.... The Husband shall continue to support the Wife in the manner that he has been *541 for the months that he has lived separate and apart from the marital home. When the marital house has been sold the Husband agrees to pay the Wife the sum of $150.00 per week child support ($50.00 per child per week) commencing the first week following the closing on the sale of the marital house.... This figure will be reviewed by the parties one year from the sale of the house.
MISCELLANEOUS PROVISIONS
6) This Agreement contains the entire understanding of the parties and there are no representations, warranties, covenants or undertakings other than those expressly set forth herein.
8) The parties respectively acknowledge that each has independent legal advice by counsel of his or her own selection; that each fully understands the facts and has been fully informed as to his or her legal rights and obligations; and that having had such advice, and with knowledge, each of them is signing the agreement freely and voluntarily.
It is clear from the agreement that no permanent support was provided for plaintiff. Similarly evident is the absence of language which specifically precludes alimony. Thus, the agreement is subject to judicial interpretation. Where a dispute arises as to the application of a property settlement agreement, the court may apply basic principles of fairness and equity to resolve ambiguities. Cf. Edgerton v. Edgerton, 203 N.J. Super. 160, 171, 496 A.2d 366 (App.Div. 1985). We will separately consider the basic unfairness of the agreement and the fact that plaintiff's attorney did not aid her in making more appropriate requests or investigation of defendant's disposable assets such as his retirement plan.
Our courts consistently have held that while spousal agreements are presumed valid, Petersen v., Petersen, 85 N.J. 638, 642, 428 A.2d 1301 (1981), any agreement may be set aside "when it is the product of fraud or overreaching by a party with power to take advantage of a confidential relationship." Dworkin v. Dworkin, 217 N.J. Super. 518, 523, 526 A.2d 278 (1987); see also Schiff v. Schiff, 116 N.J. Super. 546, 561, 283 A.2d 131 (App.Div. 1971), certif. den., 60 N.J. 139, 286 A.2d 512 (1972); Petruccio v. Petruccio, 205 N.J. Super. 577, 581, 501 A.2d 593 (App.Div. 1985). Only those agreements which are fair and equitable will be enforced when dealing with family law. Petersen, supra, 85 N.J. at 642, 428 A.2d 1301.
*542 The law grants particular leniency to agreements made in the domestic arena, and likewise allows judges greater discretion when interpreting such agreements. See N.J.S.A. 2A:34-23. Such discretion lies in the principle that although marital agreements are contractual in nature, "contract principles have little place in the law of domestic relations." Lepis v. Lepis, 83 N.J. 139, 148, 416 A.2d 45 (1980). The circumstances of this matter appear to fall squarely within the parameters for modification.
Plaintiff ended her career at the request of her husband to become a full-time homemaker. She did not handle any of the family's finances and was generally unaware of the cost of supporting herself and her three children. Thus, plaintiff severely underestimated her living expenses when the agreement was drawn. She also received little, if any, advice in this regard from the attorney suggested by her husband. We are mindful of the fact that this attorney was a relative of defendant, had represented the couple while they were married and continued to represent defendant after the divorce. As a result, we believe that plaintiff's interests were not properly or adequately addressed in the agreement. Therefore, the agreement must be modified.
Our Supreme Court has held that a party seeking modification of a separation agreement has the burden to show a change in circumstances which substantially impair the ability of the spouse to support herself in the manner to which she was accustomed prior to the divorce. Id. 83 N.J. at 157, 416 A.2d 45. Changed circumstances may be evidenced by an increase in the supporting spouse's income, or a general rise in the cost of living. Id. at 151, 416 A.2d 45. Both of these elements are present in this case. Defendant's 1983 income of $40,000 has increased more than 100%; he earned in excess of $100,000 in 1988. Plaintiff earned $23,000 in 1988, a fraction of defendant's salary the same year. This disparity makes clear that defendant's raise in salary constituted changed circumstances *543 sufficient to impose spousal support. Id. at 152-53, 416 A.2d 45.
Plaintiff may be able to provide herself and her children with the basic fundamentals for living, but mere survival of the dependent spouse is not the proper standard to determine whether support should be modified. The supporting spouse's obligation contemplates the quality of the parties' economic life during marriage. Id. at 150, 416 A.2d 45; Khalaf v. Khalaf, 58 N.J. 63, 69, 275 A.2d 132 (1971). Indeed, changed circumstances are not limited in scope to events which were unforeseeable at the time of divorce. The supporting spouse has a continuing obligation to contribute to the maintenance of the dependent spouse at the former standard of living. Lepis, supra, 83 N.J. at 152, 416 A.2d 45.
Here, Judge Herr painstakingly calculated the respective incomes and expenses of the parties and determined an alimony award of $800 per month to be appropriate. She considered the divergence in the parties' standard of living and the contributions made by both parties to achieve a successful marriage. We are entirely satisfied that a spouse who maintains the home while her husband's career advances should share in the rewards of their combined efforts. Scherzer v. Scherzer, 136 N.J. Super. 397, 401, 346 A.2d 434 (App.Div. 1975), certif. den., 69 N.J. 391, 354 A.2d 319 (1976). Recent history demonstrates that, most often, the husband's career advances and the wife will live through the lean years, bear the husband's children, and keep his home. We will not sanction an agreement which prohibits a woman devoted to her husband and family from enjoying the fruits of her labor just as they are to be reaped.
Defendant contends that plaintiff is attempting to improve her lifestyle beyond that which she enjoyed during her life with him. We do not agree. Where a family's expenditures and income had been consistently expanding, the dependent spouse should not be confined to the precise lifestyle enjoyed during the parties' last year together. Defendant's *544 income picture should be viewed with an eye toward the future, since it was to this potential that both parties contributed during the marriage. The then existing earning potential of the working spouse may be shared by the spouse who kept the home, and that standard of living should be implemented through an adequate alimony award. Gugliotta v. Gugliotta, 160 N.J. Super. 160, 164, 388 A.2d 1338 (Ch. Div.), aff'd, 164 N.J. Super. 139, 395 A.2d 901 (App.Div. 1978).
In most cases, given a marriage of this duration, some award of alimony is given in the initial property settlement agreement. Here, probably due to the inadequate advice of counsel, the agreement provided no spousal support. Thus, plaintiff has been deprived not only of any increment in defendant's earning capacity, but, more importantly, has not even been maintained according to her former status. The record reveals that plaintiff enjoyed an affluent lifestyle during her marriage to defendant, but now must exert herculean efforts to make ends meet.
Defendant is obligated to support plaintiff at least according to her former status, so long as he is economically able to do so. Lepis, supra, 83 N.J. at 152, 416 A.2d 45. Indeed, while there may have been some question of the husband's ability immediately after the divorce to maintain his former wife at this level, defendant's substantial present salary warrants the alimony assessed and increased support. Zazzo v. Zazzo, 245 N.J. Super. 124, 130, 584 A.2d 281 (App.Div. 1990). Defendant's role in his new family does not obviate his responsibilities to his first family. Any arguments made in that vein are singularly unimpressive. Plaintiff is entitled to a portion of defendant's income in order to maintain the lifestyle she enjoyed during their marriage. For that reason, Judge Herr's award of alimony of $800 per month is affirmed.
Defendant contends that Judge Herr's order granting counsel fees to plaintiff was improper. We do not agree. Under the laws of New Jersey, the award of counsel fees and costs in a matrimonial action rests in the discretion of the trial *545 court. Salch v. Salch, 240 N.J. Super. 441, 443, 573 A.2d 520 (App.Div. 1990). Several factors are analyzed in determining whether the award is appropriate, including the wife's need, the husband's financial ability to pay and the wife's good faith in instituting or defending the action. Id.; Williams v. Williams, 59 N.J. 229, 281 A.2d 273 (1971); Darmanin v. Darmanin, 224 N.J. Super. 427, 431, 540 A.2d 913 (App.Div. 1988). Trial judges are to consider the following guidelines when awarding counsel fees: The party requesting the award must be in financial need; the party against whom the award is granted must have the financial ability to pay; and, where the first two factors have been established, the party requesting the fees must have acted in good faith in litigation. Id. at 431, 540 A.2d 913; see also N.J.S.A. 2A:34-23.[1] Success is thus not a prerequisite for an award of counsel fees. Cf. Darmanin, supra, 224 N.J. Super. at 428, 540 A.2d 913.
Judge Herr found that plaintiff's counsel fees were reasonable; that plaintiff's needs were clear; and that defendant, who was earning a salary four times as great as plaintiff's, was in a position to pay for the fees. The judge stated that plaintiff had met the criteria set forth in Williams and the standard of good faith emphasized in Darmanin and, therefore, was entitled to relief. The award represented a reasonable compensation for legal services which were reasonably necessary in this litigation. The award, therefore, was perfectly proper. See Mayer v. Mayer, 180 N.J. Super. 164, 169, 434 A.2d 614 (App.Div.), certif. den., 88 N.J. 494, 443 A.2d 709 (1981).
Defendant next contends that the order of Judge Herr which denied defendant's application to credit payments made to the children's college against support arrearage was improper. Defendant was in arrears for child support payments in the *546 amount of $1,900 in 1988. Arguing that plaintiff had been unjustly enriched by his simultaneous payments to her and to the college, defendant demanded a credit of $1,844 (the amount of the room & board) against the $1,900 owed in arrearage. Judge Herr ruled that defendant was not entitled to receive a credit for his prior simultaneous payments. The judge based her decision upon the fact that defendant's payments had been far below the Child Support Guidelines for many years and, therefore, he was not entitled to recover for any accidental overpayment made to plaintiff. We agree and find no overpayment.
Defendant's argument of restitution is predicated upon the notion that plaintiff received an unjust benefit. It is clear from the facts, however, that any surplus money paid by defendant to plaintiff could not have been unjust. Where a person has received a benefit from another, liability does not attach if the circumstances indicate that it is not unjust for the payee to retain the benefit. Messner v. Union County, 34 N.J. 233, 238, 167 A.2d 897 (1961). We are satisfied that Judge Herr's decision to deny defendant a credit against his arrearage was based upon sufficient, credible evidence and we, therefore, affirm her ruling. Pascale v. Pascale, 113 N.J. 20, 33, 549 A.2d 782 (1988).
Under our laws, children are entitled to be supported at least according to the standard of living to which they had grown accustomed prior to the separation of their parents. Lepis, supra, 83 N.J. at 150, 416 A.2d 45. An increase in a child's needs justifies an increase in support by the financially capable parent. Id. at 151, 416 A.2d 45. Such escalation in need may be demonstrated by maturation or a rise in the cost of living. The talisman of concern is always the welfare of the child. Gordon v. Gordon, 147 N.J. Super. 585, 590, 371 A.2d 791 (1970).
Despite defendant's protestations that the increase in support was unjust, the facts bespeak a proper ruling. Judge *547 Herr carefully analyzed the facts of this case within the context of N.J.S.A. 9:17-53(e) and determined the appropriate amount of child support to be $200.00 per week, which would allow the children to resume the standard of life they enjoyed before the separation of their parents. Additionally, if the parents become more affluent, the standard may increase. Defendant's children are not divorced from their father and have a right to be supported in accordance with his financial status. Zazzo, supra, 245 N.J. Super. at 130, 584 A.2d 281. The increased child support does just that and is fully supported by the record.
Plaintiff contends that her award of proceeds from the sale of the marital home was inadequate. The calculations, plaintiff asserts, should reflect payment by her of defendant's financial obligations through the satisfaction of the second and third mortgages, which were taken solely for defendant's benefit, and which were paid in full with the proceeds from the marital home. Moreover, plaintiff contends that the money she received from litigation concerning the sale of the home should not be factored into her share of the marital home. Plaintiff contends that the litigation was extraneous to the agreement. We find the record inadequate for a full consideration of this issue and remand to Judge Herr for recalculation after a plenary hearing.
Plaintiff further contends that the ruling of the motion judge which denied her interest on the amount defendant was obligated to pay for the sale of the marital home was erroneous. The judge determined, relying solely upon self-serving certifications, that plaintiff delayed the sale of the home and, therefore, she should receive no interest. The facts indicate otherwise. Plaintiff entered into an agreement to sell the home in 1983, which fell through. Another contract was signed in February 1984. The purchaser breached the contract. Neither of these events are attributable to plaintiff. Plaintiff's alleged delay was the motion judge's sole basis for denying interest on the amount owed. There is nothing in evidence, however, *548 which proves any intentional delay by plaintiff. Therefore, the decision is unsupported and is reversed. See Fusco v. Fusco, 186 N.J. Super. 321, 328-29, 452 A.2d 681 (App.Div. 1982).
Although Judge Herr granted interest on the amount from December 9, 1988, the common law indicates plaintiff may be entitled to interest from the date of closing. The general rule is that in the absence of an express agreement to the contrary, a liquidated obligation carries conventional interest from the due date as a matter of course. Zuhlcke v. Zuhlcke, 136 N.J. Super. 266, 269, 345 A.2d 806 (Ch.Div. 1975). The most basic of considerations here is that plaintiff has been denied the use of at least $11,000 over a four-year period in which she has incurred substantial debt to keep afloat. Needless to say, plaintiff was unable to reinvest the money, which is often the contemplated purpose of such lump sum settlements. See Lepis, supra, 83 N.J. at 154, 416 A.2d 45 (equitable distribution allows the dependent spouse funds to invest for security and additional income). The law imposes a duty to pay interest from the time payment is due. Consolidated Police & Firemen's Pension Fund Comm'n. v. Passaic, 23 N.J. 645, 653, 130 A.2d 377 (1957). Therefore, this issue is reversed and remanded for proper calculation at the plenary proceedings.
The motion judge ruled that defendant should repay the loans incurred by the children only insofar as they were for tuition and books. This ruling was premised upon the notion that defendant is liable only for tuition and not any other expenses normally associated with college attendance. We disagree.
In Khalaf v. Khalaf, 58 N.J. 63, 71, 275 A.2d 132 (1971), the child of separated parents was forced to incur student loans after his father refused to pay for college expenses. Our Supreme Court stated that the student could not be forced to incur student loans to complete college. Id. at 71, 275 A.2d 132. The Court reasoned that had it not been for his parents' separation, the boy's college expenses would have been met by *549 his parents. Id. In accordance with Khalaf, the order restricting defendant's repayment of loans solely for tuition and books is reversed and we direct the full reconsideration of this issue by Judge Herr. See Johnson, supra, 220 N.J. Super. at 263, 531 A.2d 1078.
Plaintiff also contests as unsupported the order of the motion judge which denied plaintiff an equitable distribution of the IRA accumulated by defendant during the marriage. The facts reveal that plaintiff was unaware of the IRA's existence at the time the agreement was executed. Indeed, defendant closed out the IRA in February 1983, shortly after the divorce. The motion judge denied distribution of the IRA since it was not mentioned in the agreement and because plaintiff was represented by counsel at the time the agreement was drawn. The IRA was the second most sizeable asset, equal to over 15% of the equity in the marital home.
As we have previously explained, the impartiality of plaintiff's original attorney is suspect. Thus, the agreement is likely the product of overreaching and appears unconscionable in its application to plaintiff. It fails to include substantial assets, such as the IRA, and it mandates support payments which are dreadfully inadequate. The IRA appears, from the record, to clearly be an asset acquired during the marriage. Brodzinsky v. Pulek, 75 N.J. Super. 40, 48, 182 A.2d 149 (App.Div.) certif. den., 38 N.J. 304, 182 A.2d 149 (1962). Plaintiff was entitled to consideration of all assets which were accumulated during the marriage. Moore v. Moore, 114 N.J. 147, 162, 553 A.2d 20 (1989). As such, the IRA is an asset which should have been considered for equitable distribution. On remand, the judge shall determine whether there was any disclosure of the assets when the agreement was drawn and whether there was a waiver by plaintiff of her right to distribution of this asset or other similarly undisclosed or undivided asset. In this regard, discovery may be required.
Plaintiff finally contends that the ruling of the motion judge which refused to consider the debt owed by defendant to *550 plaintiff because it was not part of the matrimonial case should be reversed. It is clear that this claim could have been heard by the trial court pursuant to the entire controversy doctrine.
All claims between the same parties arising out of or related to the same circumstances may be joined in a single action. Brown v. Brown, 208 N.J. Super. 372, 377-78, 506 A.2d 29 (App.Div. 1986). Here, plaintiff was seeking payment of money due under the agreement. Less than eight weeks later, plaintiff loaned defendant $2,500 which allowed him to honeymoon with his second wife. The claim was sufficiently related to the divorce action to have been heard at the same time. Cf. R. 5:1-2(a). A wife's civil claims for monetary compensation against her husband, and his liability therefor, are relevant circumstances affecting the parties' financial status in the context of a matrimonial controversy. Brown, supra, 208 N.J. Super. at 378, 506 A.2d 29. Accordingly, plaintiff's claim for the personal loan made to defendant should have been heard when raised to prevent the fractionalization of this case. The motion judge's failure to hear the claim was erroneous, and his order is reversed and remanded for reconsideration by Judge Herr. Johnson, supra, 220 N.J. Super. at 263, 531 A.2d 1078.
From the time of the agreement's execution, plaintiff has been treated inequitably. Apparently, plaintiff was both the victim of unfair dealing at the hands of defendant and received inadequate advice from an attorney with a conflict of interest. The best evidence of such fault is the agreement itself which appears to have been unconscionable when signed and thus may be subject to reformation or rescission. Judge Herr's modifications to the agreement were perfectly equitable and sound. Her rulings in this regard are affirmed.
The orders of the motion judge were primarily premised upon self-serving certifications and rarely, if ever, upon actual evidence. His judgments were against the weight of the evidence as the same should have been developed under his guidance. *551 As his rulings resulted in a denial of justice, the appealed rulings of the motion judge are reversed and remanded for further determination by Judge Herr. Id. We will leave to the discretion of the trial court whether to alter Judge Herr's grant of support based upon the terms of the agreement and the surrounding circumstances.
Affirmed in part; reversed in part; and remanded for action consistent with this opinion.
NOTES
[1] Our reading of these statutory provisions reveals no inconsistency with the theory espoused in Darmanin.