**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0810-17T2

K.L.B.,

    Plaintiff-Respondent,

v.

R.B.,

    Defendant-Appellant.

_____

Argued September 20, 2018 – Decided December 18, 2018

Before Judges Alvarez and Nugent.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FM-10-0395-15.

Eric S. Solotoff argued the cause for appellant (Fox Rothschild LLP, attorneys; Eric S. Solotoff, of counsel and on the briefs; Eliana T. Baer, on the briefs).

Georgia M. Fraser argued the cause for respondent (Fraser Family Law Office, LLC, attorneys; Georgia M. Fraser, on the brief).

PER CURIAM

Defendant R.B. appeals sections of two family court orders: the first issued August 8, 2017. The second, entered September 29, 2017, denied defendant reconsideration of the earlier order and denied him additional relief he sought in the motion. We limit the discussion in this decision to the reconsideration order, as it is the only one for which the appeal was properly taken. See R. 2:4-1. We do not agree that the reconsideration decision was an abuse of discretion. Nor do we conclude the additional relief defendant requested should have been granted. Thus, we affirm.

Plaintiff K.L.B. and defendant divorced on October 4, 2016. They incorporated the terms of a handwritten matrimonial settlement agreement (MSA) into the divorce judgment. The agreement allocated their children's college tuition and related expenses forty percent to plaintiff and sixty percent to defendant. The MSA acknowledged that the parties' son, who was attending college, might require a fifth year of schooling to complete his education. The parties did not set an annual cap on the total number for which they would be responsible. The parties' daughter was then still in high school. The parents agreed to the same allocation for her college education—forty percent to plaintiff and sixty percent to defendant—however, they placed an annual cap of $40,000 on the obligation. When the parties entered into the MSA, defendant's

A-0810-17T2

relationship with his children was already significantly strained. It has only worsened since that time.

The judge who decided the matter found that the parties exchanged numerous emails with regard to the children's college decision-making process and ultimate choices. These included many unanswered emails defendant sent to his daughter regarding her decision.

The emails included in the record on appeal, among other things, indicate that defendant attempted to make his financial contributions contingent upon both children improving their relationship with him. The MSA was silent on the subject.

Eventually, plaintiff filed a motion to enforce defendant's college contribution commitment. He resisted, contending that since he was not involved in the decision-making process, he was not liable. Defendant cross-moved to emancipate the children, or in the alternative, for the court to schedule a plenary hearing before deciding the amount he should contribute, if any. The August 8, 2017 motion order granted plaintiff the relief that she sought, including a counsel fee award of $2500, based in part on a finding that defendant had acted in bad faith.

A-0810-17T2

Defendant then filed an unsuccessful motion for reconsideration. The judge allowed plaintiff an additional $3037.50 by way of counsel fees. Defendant's motion included a request for reunification counseling, which was denied. The judge further ordered that if defendant failed to make timely payments, upon plaintiff's filing of a certification to that effect, a warrant would issue for his arrest. See R. 5:3-7(b).

Defendant raises eight points of error on appeal:

> POINT I
> THE TRIAL COURT'S HOLDING COMPELLING [DEFENDANT] TO CONTRIBUTE SIXTY-PERCENT (60%) OF [THEIR DAUGHTER'S] COLLEGE COSTS AND EXPENSES DESPITE [PLAINTIFF'S] FAILURE TO FULFILL HER OBLIGATION TO KEEP HIM "SIGNIFICANTLY INVOLVED" IN THE COLLEGE SELECTION AND ENROLLMENT PROCESS WAS AN ABUSE OF DISCRETION AND AGAINST THE WEIGHT OF THE EVIDENCE.

> POINT II
> THE TRIAL COURT ERRED IN ITS HOLDING TO COMPEL [DEFENDANT] TO CONTRIBUTE SIXTY-PERCENT (60%) OF BRANDON'S COLLEGE COSTS AT NEW YORK UNIVERSITY AFTER [THEIR SON'S] VOLUNTARY REJECTION OF [DEFENDANT'S] INVOLVEMENT IN HIS DECISION TO ALTER CAREER PATHS AND TRANSFER SCHOOLS.

A-0810-17T2

POINT III

THE TRIAL COURT'S REFUSAL TO ORDER REUNIFICATION THERAPY WAS AN ABUSE OF DISCRETION.

POINT IV

THE TRIAL COURT'S FAILURE TO EMANCIPATE THE CHILDREN, WHO HAVE VOLUNTARILY REMOVED [DEFENDANT] FROM THEIR SPHERE OF PARENTAL INFLUENCE WITHOUT CAUSE, WAS AN ABUSE OF DISCRETION AND AGAINST THE WEIGHT OF THE EVIDENCE.

POINT V

THE TRIAL COURT'S FAILURE TO CONDUCT A PLENARY HEARING AND RELIANCE ON NOTHING MORE THAN COMPETING CERTIFICATIONS AND INADMISSIBLE, UNCERTIFIED HEARSAY DOCUMENTATION ANNEXED THERETO IN RENDERING ITS DETERMINATION WAS AN ABUSE OF DISCRETION AND AGAINST THE WEIGHT OF THE EVIDENCE.

POINT VI

THE TR[IA]L COURT'S "AUTOMATIC BENCH WARRANT" PROVISION IN THE SEPTEMBER 29, 2017 ORDER SHOULD BE VACATED AS VIOLATIVE OF DEFENDANT'S RIGHT TO DUE PROCESS.

POINT VII

THE TRIAL COURT'S AWARD OF COUNSEL FEES ABSENT AN EXAMINATION OF ALL FACTORS UNDER RULE 5:5-3(C) AND UPON ITS ERRONEOUS FINDING OF [DEFENDANT'S] BAD FAITH WAS AN ABUSE OF DISCRETION.

POINT VIII
IN THE EVENT THAT THIS MATTER IS NOT
REVERSED ON APPEAL, THE TRIAL COURT'S
DECISION MERITS A REMAND TO A NEW TRIAL
JUDGE.

I.

We address the issues raised by defendant regarding the court's enforcement of the MSA within the context of the reconsideration application. Rule 4:49-2 governs motions for reconsideration:

> Except as otherwise provided by R. 1:13-1 (clerical errors) a motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall be served not later than 20 days after service of the judgment or order upon all parties by the party obtaining it. The motion shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

Reconsideration is "a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990).

The denial of a motion for reconsideration is reviewed for abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). "An abuse of discretion 'arises when a decision is made without a rational

6

explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Reconsideration is not appropriate merely because a litigant is unhappy with a decision or wants to reargue a motion. Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Rather, reconsideration should only be used in those cases that fit into a narrow category where "either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." D'Atria, 242 N.J. Super. at 401. "[M]otion practice must come to an end at some point, and if repetitive bites at the apple are allowed, the core will swiftly sour." Ibid.

New Jersey has long supported a policy favoring the use of consensual agreements to resolve marital controversies, treating them as binding contracts between the parties that should be enforced. Pacifico v. Pacifico, 190 N.J. 258, 265 (2007); Konzelman v. Konzelman, 158 N.J. 185, 193 (1999); Petersen v. Petersen, 85 N.J. 638, 642 (1981); Schlemm v. Schlemm, 31 N.J. 557 (1960). "[M]atrimonial agreements between spouses relating to . . . support, which are

fair and just, fall within the category of contracts enforceable in equity." Petersen, 85 N.J. at 642 (citation omitted).

"It is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citation omitted). Moreover, "[w]hen a court alters an agreement in the absence of a compelling reason, the court eviscerates the certitude the parties thought they had secured, and in the long run undermines this Court's preference for settlement of all, including marital, disputes." Id. at 55. "[T]he law grants particular leniency to agreements made in the domestic arena, and likewise allows judges greater discretion when interpreting such agreements." Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992).

The Family Part has substantial discretion in compelling a parent to contribute to their child's college costs. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 588 (App. Div. 2016) (citing Gotlib v. Gotlib, 399 N.J. Super. 295, 308 (App. Div. 2008)) ("The Family Part's 'substantial discretion' in determining child support applies equally to compelling a parent to contribute to their child's college costs."). Such decisions, like decisions on reconsideration applications, are also subject to appellate review under an abuse of discretion standard. Ibid.

A-0810-17T2

"When a party to a comprehensive negotiated [property settlement agreement] seeks to modify any support obligation, that party must meet the threshold standard of changed circumstances." J.B. v. W.B., 215 N.J. 305, 327 (2013) (emphasis added). "Changed circumstances include 'an increase in the cost of living, an increase or decrease in the income of the supporting or supported spouse, cohabitation of the dependent spouse, illness or disability arising after the entry of the judgment, and changes in federal tax law.'" Quinn v. Quinn, 225 N.J. 34, 49 (2016) (quoting J.B., 215 N.J. at 327).

With regard to the motion for reconsideration as to defendant's contributions to the college tuition for the parties' daughter, the judge found defendant's relationship to her was unchanged from the time the MSA was entered and the child chose a school. The judge also concluded from the emails that defendant was fully informed by plaintiff regarding the daughter's search process. Defendant sought to revisit the issue of college contribution because of his poor relationship with his daughter and plaintiff's alleged failure to communicate with him about the search. The judge's findings to the contrary—which we review with particular deference given the decision was made by a family court judge—were supported by more than adequate, substantial, and credible evidence. See Cesare v. Cesare, 154 N.J. 394, 411-12 (1998).

On reconsideration, the judge was essentially only asked to change his opinion. His initial decision was based on facts in the record, rationally explained, and was consistent with established policies. See Milne, 428 N.J. Super. at 197. There was no change in the relationship or in the circumstances overall from the time the MSA was entered into. Defendant agreed to the obligation that plaintiff sought to enforce. The judge's decision did not overlook any law or evidence, and was not an abuse of discretion. See D'Atria, 242 N.J. Super. at 401.

With regard to the parties' son, the MSA did not impose a cap, and the possibility that the child would be attending college for a fifth year was referenced in the documents. Defendant included the issue on the application for reconsideration. The judge declined to consider it because defendant raised it for the first time in his motion for reconsideration. Even if the judge had considered the question, however, the binding MSA controlled, defendant did not proffer any evidence that would warrant setting it aside, and defendant was thus obligated. Defendant's relationship to his son was also unchanged. The judge's decision was therefore not an abuse of discretion.

Defendant's separate application for reunification therapy was also raised for the first time when the reconsideration motion was filed. Given the age of the children, the request is simply unrealistic and Black v. Black, 436 N.J. Super. 130 (Ch. Div. 2013), is not binding upon us.

The father's relationship with his children had deteriorated by the time the parents divorced. The children are now college students. It seems quite clear that the court's decision was a reasonable and pragmatic exercise of discretion, which did not deny defendant justice. See N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (citing N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) ("Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice"). We see no basis for us to intervene. Ibid.

III.

Defendant's application for the emancipation of his children and termination of his support obligations are so lacking in merit as to not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). These children are full-time college students financially dependent on their parents. In the MSA, defendant

agreed to contribute to their education beyond age eighteen even though at the time he had a poor relationship with them.  The children are entitled to their parents' contributions.

## IV.

Rule 5:3-7(b) provides that "[o]n finding that a party has violated an alimony, financial maintenance, or child support order the court may, in addition to remedies provided by R. 1:10-3, grant any of the following remedies, either singly or in combination: . . . (7) issuance of a warrant to be executed upon the further violation of the judgment or order."  Defendant's noncompliance with his financial obligations was the reason for the post-judgment motion practice.  Therefore, the court was justified in implementing the relief authorized by the Rule.  The judge did not abuse his discretion, either in terms of the factual conclusion that the relief was necessary or in the interpretation of the relevant law.  See D'Atria, 242 N.J. Super. at 401-02.

## V.

Awards of counsel fees and costs rest within the discretion of the court and will only be disturbed in clear cases.  Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000); Rendine v. Pantzer, 141 N.J. 292, 317 (1995).  Specifically, "the award of counsel fees and costs in a matrimonial action rests

in the discretion of the court."  Williams v. Williams, 59 N.J. 229, 233 (1971).

The ability to award counsel fees in actions for enforcement of interspousal

agreements is carved out in Rules 4:42-9(a)(1) and 5:3-5(c).  Rule 5:3-5(c)

provides, in relevant part:

> Subject to the provisions of R. 4:42-9(b), (c), and (d),
> the court in its discretion may make an allowance, both
> pendente lite and on final determination, to be paid by
> any party to the action, including, if deemed to be just,
> any party successful in the action, on any claim for . . .
> enforcement of agreements between spouses, . . . and
> claims relating to family type matters.  All applications
> or motions seeking an award of attorney fees shall
> include an affidavit of services at the time of initial
> filing, as required by paragraph (d) of this rule.

When courts determine the amount of an award of counsel fees, Rule 5:3-

5(c) sets forth the factors to be considered, including:

> (1) the financial circumstances of the parties; (2) the
> ability of the parties to pay their own fees or to
> contribute to the fees of the other party; (3) the
> reasonableness and good faith of the positions
> advanced by the parties both during and prior to trial;
> (4) the extent of the fees incurred by both parties; (5)
> any fees previously awarded; (6) the amount of fees
> previously paid to counsel by each party; (7) the results
> obtained; (8) the degree to which fees were incurred to
> enforce existing orders or to compel discovery; and (9)
> any other factor bearing on the fairness of an award.

In deciding whether to award counsel fees, the court should also consider

"whether the party requesting the fees is in financial need; whether the party

13

against whom the fees are sought has the ability to pay; the good or bad faith of either party . . .; the nature and extent of the services rendered; and the reasonableness of the fees." Mani v. Mani, 183 N.J. 70, 94-95 (2005).

Defendant, other than his disagreement with the judge's fact-finding and conclusions of law, has no basis for setting aside the initial modest counsel fee award. The award of an additional $3037.50 counsel fee on the reconsideration application is also reasonable in light of the court's analysis of the equities of the situation and the amounts requested. Although the judge's discussion was limited, his decision was clearly premised on the relevant factors.

Defendant promptly repudiated the agreement he entered into at the time of the divorce. The judge was concerned defendant was holding the children economically hostage to his expectations regarding his relationship with them. The finding of bad faith is supported by the record.

VI.

Defendant's position that a plenary hearing should have been ordered lacks merit. A plenary hearing is necessary to resolve a genuine issue of a material fact, as "trial judges cannot resolve material factual disputes upon conflicting affidavits and certifications." Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995). However, "not every factual dispute that arises in the context

of matrimonial proceedings triggers the need for a plenary hearing." Ibid. The Court has held:

> Although equity demands that spouses be afforded an opportunity to seek modification, the opportunity need not include a hearing when the material facts are not in genuine dispute. We therefore hold that a party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary. Without such a standard, courts would be obligated to hold hearings on every modification application.
>
> [Lepis v. Lepis, 83 N.J. 139, 159 (1980) (citations omitted).]

The Lepis court explained that, "[i]n determining whether a material fact is in dispute, a court should rely on the supporting documents and affidavits of the parties." Ibid.

Defendant did not demonstrate material factual disputes. The lack of materiality of the allegedly disputed facts make a hearing unnecessary. Given our decision on this appeal as set forth above, no remand is necessary.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0810-17T2