**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1944-19

ALAN J. MEYERS,

    Plaintiff-Appellant,

v.

SUSAN M. MEYERS,

    Defendant-Respondent.

_____

> Argued October 14, 2021 – Decided December 21, 2021
>
> Before Judges Gilson, Gooden Brown, and Gummer.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0775-10.
>
> Grant W. Waterson argued the cause for appellant (Skoloff & Wolfe, PC, attorneys; Grant W. Waterson and Patrick T. Collins, on the briefs).
>
> Bonnie C. Frost argued the cause for respondent (Einhorn, Barbarito, Frost & Botwinick, attorneys; Bonnie C. Frost, of counsel and on the brief; Matheu D. Nunn, on the brief).

PER CURIAM

In 2011, after thirty years of marriage, the parties divorced, and plaintiff agreed to pay defendant just over $12,900 per month in permanent alimony. In 2016, plaintiff moved to reduce his alimony, representing that he had lost his executive-level job, was disabled, and was unable to work. In 2018, the parties signed a consent order under which defendant agreed to accept a reduced alimony of $3,200 per month.

Shortly thereafter, defendant learned that plaintiff had taken a new executive-level job with a high salary. She moved to vacate the consent order under Rule 4:50-1. Following a plenary hearing, the family court found that the consent order had been procured by plaintiff's fraud and it would be unconscionable to enforce the consent order. Accordingly, the family court vacated the consent order, reinstated plaintiff's prior support obligations, and awarded defendant fees.

Plaintiff appeals, arguing the consent order incorporated the parties' settlement agreement and that agreement should have been enforced, defendant did not prove fraud, the settlement agreement was not unconscionable, and the family court erred in awarding fees to defendant. We reject these arguments and affirm.

I.

The parties were married in October 1979 and divorced in January 2011. The judgment of divorce incorporated a marital settlement agreement (MSA), through which they resolved the issues concerning their divorce, including support obligations.

At the time of their divorce, plaintiff, the former husband, was the Chief Scientific Officer of Revlon, and he was receiving a base salary of $450,000 per year plus an annual bonus. Defendant was not employed at that time.

Under the MSA, plaintiff agreed to pay defendant $12,916.68 per month in permanent alimony plus 32.85% of his gross bonus. Plaintiff also agreed to pay the cost of defendant's health insurance until she was eligible for Medicare and to maintain life insurance to secure his support obligations.

In 2014, plaintiff's employment with Revlon ended. He sued Revlon, contending that he was a victim of discrimination and anti-whistleblowing retaliation. In March 2015, plaintiff settled with Revlon and received $3,500,000, which included $1 million in severance pay.

Between 2015 and 2018, the parties filed a series of motions in which defendant sought to enforce the support obligations under the MSA and plaintiff sought to reduce those obligations. In support of his position, plaintiff filed

3

certifications representing that he was disabled, he was receiving disability insurance payments, and he was "completely unable to work at [that] time and it [was] unclear whether [his] condition will ever improve to the point where [he] can become meaningfully employed again."

The family court scheduled the motions for a plenary hearing. In support of his motion to reduce his support obligations, plaintiff submitted reports and letters from a psychiatrist. Plaintiff's expert opined that plaintiff remained "fully psychiatrically and psychologically disabled at the current time and is unable to work and will be unable to work for the foreseeable future."

On April 30, 2018, the day the plenary hearing was to begin, the parties entered into a settlement agreement and placed the terms of that agreement on the record. Under the agreement, plaintiff's alimony obligation was reduced from $12,916.68 per month to $3,200 per month and it was changed from permanent alimony to term alimony that would end when plaintiff turned sixty-eight years old. Plaintiff's obligation to pay defendant's health insurance was also eliminated, and his insurance obligation was reduced. In addition, plaintiff paid $220,000 to defendant.

The terms of the settlement were reduced to a written agreement and incorporated into a consent order that was entered by the family court on May

4

23, 2018 (the 2018 Consent Order).  The 2018 Consent Order also stated, in

relevant part:

> The provisions set forth in this Consent Order,
> including the amount of monthly support to be paid, are
> final and are not modifiable under any circumstance,
> whether foreseeable or not.  This Consent Order
> constitutes a final resolution of all claims between the
> parties. . . . Absent a failure to make payments provided
> for herein, there shall be no further Court applications
> or proceedings between the parties.

Shortly after the 2018 Consent Order was entered, plaintiff obtained a new

executive-level job working for a cosmetic company.  His compensation

included a base salary of $400,000 per year and bonuses.  When defendant

learned plaintiff was re-employed, she moved to vacate the 2018 Consent Order

under Rule 4:50-1(b), (c), and (f).  The family court found that defendant had

made a prima facie showing of fraud.  On February 22, 2019, the court entered

an order allowing discovery to be followed by a plenary hearing.

A six-day plenary hearing was conducted in October and November 2019.

Four witnesses testified at that hearing:  plaintiff, defendant, and two experts.

The parties also submitted numerous documents into evidence.

On December 3, 2019, the family court made detailed findings of facts

and conclusions of law that were placed on the record.  The court found that in

and before May 2018, plaintiff had "lied" when he claimed he was unable to

A-1944-19

work. The court also found that when plaintiff made those false statements, plaintiff was planning to go back to work once his alimony was reduced. The court detailed plaintiff's numerous false and misleading statements about his alleged disabilities and his inability to work. Among the false statements, the court placed special emphasis on plaintiff's representations that in 2018 he was unable to read and respond to emails and engage in any type of work-oriented functions. In that regard, the court found that plaintiff had engaged in "a pattern of lies" to the court, to defendant, and to his own expert and that all those lies were designed to convince defendant that he could not work.

The court also detailed plaintiff's actions in seeking and obtaining work almost immediately after defendant agreed to reduce the support obligations. The court found that plaintiff had lied to a recruiter and his new employer by representing that he had been continuously employed. Based on all of plaintiff's lies and false statements, the court found that plaintiff was incredible.

By contrast, the court found defendant to be credible. The court found defendant had relied on her inability to rebut plaintiff's false statements in agreeing to the 2018 Consent Order.

Based on its findings of facts and conclusions of law, on December 3, 2019, the court entered an order (1) vacating the 2018 Consent Order; (2)

6

reinstituting plaintiff's support obligations under the MSA; and (3) awarding defendant fees and costs of $165,142. The court also gave plaintiff credit for the $220,000 he had paid under the 2018 Consent Order. In doing so, the court offset that lump sum payment against plaintiff's past alimony obligations and gave him a credit against the fee award for the remaining amount.[1]

II.

Plaintiff now appeals from two orders: the February 22, 2019 order setting the matter down for a plenary hearing; and the December 3, 2019 order vacating the consent order, reinstating plaintiff's prior support obligations, and awarding fees and costs to defendant. Plaintiff contends that the family court erred in (1) setting aside and failing to enforce the parties' "non-modifiable" 2018 Consent Order; (2) finding plaintiff had committed fraud; (3) finding the parties' 2018 Consent Order unconscionable; and (4) directing plaintiff to pay $165,142 in fees and costs to defendant. Given the facts found by the family court based on the evidence presented at the plenary hearing, we reject plaintiff's arguments and affirm the orders entered by the family court.

---

[1] The December 3, 2019 order also stated in paragraph two that plaintiff's motion to modify his alimony was denied without prejudice. On January 28, 2020, the court entered an order vacating paragraph two of the December 3, 2019 order.

Because the family court made fact findings after conducting a plenary hearing, our standard of review is limited and deferential. See Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012). Appellate courts defer to factual findings made by a family court based on an evidentiary hearing when such findings are supported by adequate, substantial, and credible evidence. Gnall v. Gnall, 222 N.J. 414, 428 (2015). Accordingly, we will only reverse a family court's factual findings when they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974) (internal quotation marks omitted) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). By contrast, a "trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to [a] plenary review." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

1.    The Decision to Vacate the 2018 Consent Order

In his first three arguments, plaintiff contends that the consent order was not subject to modification, the family court erred in finding that he had

perpetuated a fraud on defendant, and the family court erred in holding that the consent order was unenforceable because it was unconscionable. We disagree.

It is well-established that public policy favors enforcement of settlement agreements. Gere v. Louis, 209 N.J. 486, 500 (2012). Accordingly, "[s]ettlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016). "The prominence and weight we accord such [settlements] reflect the importance attached to individual autonomy and freedom, enabling parties to order their personal lives consistently with their post-marital responsibilities." Weishaus v. Weishaus, 180 N.J. 131, 143 (2004) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)).

Nevertheless, marital settlement agreements "must reflect the strong public and statutory purpose of ensuring fairness and equity in the dissolution of marriages." Miller v. Miller, 160 N.J. 408, 418 (1999) (citing Petersen v. Petersen, 85 N.J. 638, 644 (1981)). Consequently, "[i]f a settlement agreement is achieved through coercion, deception, fraud, undue pressure, or unseemly conduct, or if one party was not competent to voluntarily consent thereto, the settlement agreement must be set aside." Peskin v. Peskin, 271 N.J. Super. 261, 276 (App. Div. 1994). Moreover, unconscionability in the negotiation of a

settlement may serve as a basis for reforming or setting aside a marital settlement agreement. See Miller, 160 N.J. at 419; see also Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) ("'[T]he law grants particular leniency to agreements made in the domestic arena,' thus allowing 'judges greater discretion when interpreting such agreements.'" (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992))).

Initially, plaintiff argues that both parties waived their right to challenge or seek to modify the 2018 Consent Order. We have no hesitancy in rejecting that argument. Defendant's agreement was procured by fraud. Consequentially, the non-modification provision in that agreement can be set aside because that provision, like the other provisions, was procured by fraud.

In his second argument, plaintiff contends that there was no proof of fraud. The evidence and findings of facts made by the family court following the plenary hearing rebut that argument. The family court correctly identified the elements of fraud, which are "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the [person making the statement] of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."

Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005)).

The family court found that defendant had proven each of these elements by clear and convincing evidence. First, the court found that plaintiff had lied when he represented to defendant that he was unable to work. Second, the court found that plaintiff had known he could work and, therefore, his representations were lies. Third, the court found that plaintiff had intended that defendant rely on his lies and misrepresentations. Fourth, the court found that defendant reasonably had relied on plaintiff's lies. In making that finding, the court noted that while defendant may have questioned plaintiff's credibility, she had no evidence to rebut his lies and misrepresentations and, therefore, had to rely on them in entering the 2018 Consent Order. Finally, the court found that defendant had suffered resulting damages in the reduction of her alimony and in her corresponding change in lifestyle. All those factual findings are amply supported by the evidence at the plenary hearing. Moreover, the family court correctly applied the law to those factual findings. See R. 4:50-1(c); Gnall, 222 N.J. at 428.

We also reject plaintiff's third argument that the family court erred in finding the 2018 Consent Order unconscionable. Initially, we note that the

court's finding was an alternative finding, and the affirmance of the fraud finding is sufficient to affirm the family court's orders. The factual findings that plaintiff lied and misrepresented his ability to work also supports the alternative holding that it would be unconscionable to enforce the 2018 Consent Order that had been procured through fraud. See R. 4:50-1(f); Miller, 160 N.J. at 419. See also BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 121, 126 (App. Div. 2021) (a court may exercise broad power under Rule 4:50-1(f), a catch-all provision that affords relief from a final judgment under "'exceptional circumstances'" because "its boundaries are 'as expansive as the need to achieve equity and justice'" (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 290 (1994))).

2. The Fee Award

Plaintiff contends that the family court improperly granted fees and costs to defendant because it erroneously found that plaintiff had acted in bad faith. We reject this argument.

"Under the laws of New Jersey, the award of counsel fees and costs in a matrimonial action rests in the sound discretion of the trial court." Guglielmo, 253 N.J. Super. at 544-45 (citing Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)). "Fees in family actions are normally awarded to permit parties with

unequal financial positions to litigate (in good faith) on an equal footing." J.E.V.

v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012) (alteration in original).  In

determining the amount of counsel fees to award, the court should consider

> (1) the financial circumstances of the parties; (2) the
> ability of the parties to pay their own fees or to
> contribute to the fees of the other party; (3) the
> reasonableness and good faith of the positions
> advanced by the parties both during and prior to trial;
> (4) the extent of the fees incurred by both parties; (5)
> any fees previously awarded; (6) the amount of fees
> previously paid to counsel by each party; (7) the results
> obtained; (8) the degree to which fees were incurred to
> enforce existing orders or to compel discovery; and (9)
> any other factor bearing on the fairness of an award.
>
> [R. 5:3-5(c).]

"[W]here a party acts in bad faith[,] the purpose of the counsel fee award is to

protect the innocent party from the unnecessary costs and to punish the guilty

party." Welch v. Welch, 401 N.J. Super. 438, 461 (Ch. Div. 2008) (citing Yueh

v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000)).

When calculating a fee award, the court must determine the

reasonableness of the rates proposed by prevailing counsel and the

reasonableness of the time spent. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21

(2004) (citing Rendine v. Pantzer, 141 N.J. 292, 335-36 (1995)).  To

demonstrate the reasonableness of the fee application, applicants must submit

A-1944-19

an affidavit of service addressing the factors enumerated by RPC 1.5(a). R. 4:42-9(b).

A trial court's decision to grant attorney's fees in a family action will be disturbed "only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine, 141 N.J. at 317). "[An] abuse of discretion only arises on demonstration of 'manifest error or injustice.'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)). That abuse occurs when the family court's "decision is 'made without a rational explanation, [and] inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

The family court made detailed findings of facts concerning the factors set forth in Rule 5:3-5(c). The court also reviewed the certifications submitted by both counsel and found that defendant's counsel's rates were reasonable. The court then reviewed the time incurred by counsel and disallowed some time and determined which time had been reasonably spent. The court similarly analyzed the request for expert fees. The court's determination that plaintiff had acted in

14

bad faith was also amply supported by the facts found at the plenary hearing.

Accordingly, we discern no abuse of discretion in the fee award.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1944-19