**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3120-23

RENEE BRODZIK,

    Plaintiff-Respondent,

v.

CHRISTOPHER BRODZIK,

    Defendant-Appellant.

_____

Submitted May 20, 2025 – Decided June 18, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FM-06-0110-21.

Kennedy and Vassallo, attorneys for appellant (Nancy Kennedy, on the briefs).

BohZac Law, LLC, attorneys for respondent (Bohdan Zachariasevych, on the brief).

PER CURIAM

In this post-judgment dissolution matter, defendant Christopher Brodzik appeals from the Family Part order granting plaintiff Renee Brodzik's motion to extend limited duration alimony until defendant's retirement. Defendant appeals, contending that the trial court misinterpreted the parties' property settlement agreement. Defendant also argues that the Family Part erred by failing to consider the statutory factors under N.J.S.A. 2A:34-23. We affirm.

I.

After a twenty-three-year marriage, the parties divorced. The consent final judgment of divorce (FJOD) incorporated a property settlement agreement (PSA).

Paragraph 25(a) of the PSA specified that alimony would continue until defendant's anticipated retirement at age sixty-five, "regardless of any change in circumstances, including but not limited to, cohabitation or remarriage of [plaintiff] . . . ." Paragraph 25(a) also stated, "the amount and term of [l]imited [d]urational [a]limony . . . is based upon the ages of the parties, the length of the marriage, the respective incomes of the parties . . . as well as . . . the assumption and representation of [defendant] that [defendant] will retire at the age of [sixty-five] and go into pay status on his pension benefits."

Paragraph 25(g) states:

A-3120-23

The [h]usband must notify the [w]ife immediately when he retires and must provide [w]ife with proof that she has been named on the survivorship benefit of his pension. In the event that, at the time the [limited durational alimony] is to terminate, the [w]ife is not eligible to begin receiving her share of the [h]usband's pension (meaning the pension of the [h]usband is not in payout status, due to the [h]usband not retiring at the age of 65, or for some other reason that the [h]usband's pension did not go into pay status and [w]ife has not begun to receive her share of the pension of the [h]usband), then the issue of the continuation of alimony for the [w]ife may be brought forth to the [c]ourt for review.

Plaintiff moved to extend the alimony payments when she learned defendant would not retire at age sixty-five, as represented in the PSA. After a hearing, the court granted plaintiff's motion, making findings. The court's order extended limited durational alimony (LDA), effective the day the PSA set it to expire. Defendant was ordered to continue payment of LDA at a rate of $400 per week until his pension entered pay status, meaning defendant had officially retired. The court ordered defendant to "notify [p]laintiff immediately when he retires," and acknowledged his right to move for termination of the LDA "upon his retirement."

The court found that the motion hearing represented the "review" contemplated by the parties in the PSA. The court also rejected defendant's two main arguments for departing from the four corners of the PSA: first, plaintiff's

A-3120-23

material misrepresentations about her cohabitation induced defendant to execute the PSA; second, defendant signed the agreement under duress. The court found that, "the PSA and the LDA clause . . . were agreed upon by each party knowingly, voluntarily, free of any duress, and with each party represented by legal counsel."

Turning to the PSA, the trial court examined the language of paragraphs 25(a) and (g), and found:

> [U]nder the plain language of the PSA, the parties agreed and intended that the LDA was not to be modified or terminated due to any change in circumstance, including [plaintiff's] <u>cohabitation and/or remarriage</u>, or for any other reason provided in New Jersey case law or statute. The parties further agreed and intended that the term of the LDA, twenty-eight months, was based on, among other things, "the assumption and representation of [defendant], that [defendant] will retire at the age of 65 (which will be May 20, 2024) and enter pay status on his pension benefits."
>
> [(Emphasis added).]

The trial court ultimately determined that the end of the original LDA term

> was intended to coincide with [d]efendant's retirement at age sixty-five and his receipt of pension benefits, as well as [p]laintiff's receipt of her portion of those pension benefits. As [d]efendant did not retire as represented in the PSA, the LDA is to be extended to the time when [d]efendant does retire and his pension

4

benefits become effective.  Thus, the court enforces the agreement as written.

On appeal, defendant argues the Family Part misinterpreted the PSA by extending alimony.  Defendant also argues that the court issued its order without properly considering the parties' financial realities, including defendant's lower income and increased health insurance costs, defendant's contribution to plaintiff's son's wedding, and plaintiff's upcoming marriage to her former cohabitation partner.

II.

Matrimonial settlement agreements are governed by basic contract principles and, as such, courts should discern and implement the parties' intentions.  J.B. v. W.B., 215 N.J. 305, 326 (2013) (citing Pacifico v. Pacifico, 190 N.J. 258, 265 (2007)).  Consequently, as with other contracts, we review de novo the trial court's interpretation of a settlement agreement.  See Kieffer v. Best Buy, 205 N.J. 213, 222 (2011) ("The interpretation of a contract is subject to de novo review by an appellate court.")  "[W]hen the intent of the parties is plain[,] and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result."  Quinn v. Quinn, 225 N.J. 34, 45 (2016).  "[A] court should not rewrite a contract or grant a better deal than that for which the parties expressly bargained."  Ibid. (citing

A-3120-23

Solondz v. Kornmehl, 317 N.J. Super. 16, 21-22 (App. Div. 1998)). "At the same time, 'the law grants particular leniency to agreements made in the domestic arena,' thus allowing 'judges greater discretion when interpreting such agreements.'" Pacifico, 190 N.J. at 266 (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)). "The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" Ibid. (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)).

We defer to the trial court's findings of fact "when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). That deference is greater in Family Part cases "[b]ecause of the family courts' special jurisdiction and expertise in family matters . . . ." Id. at 413.

III.

Defendant makes two arguments. First, he contends that the trial court committed error by misinterpreting the PSA. Second, he contends that the trial court erred by not conducting a comprehensive analysis of the statutory factors set forth in N.J.S.A. 2A:34-23 regarding post-judgment alimony modification. We are unpersuaded.

The PSA is clear and unambiguous. Paragraph 25(a) makes clear that defendant waived cohabitation and remarriage as issues in the context of LDA. Defendant concedes that, to expedite finalization of the divorce, he elected not to contest his then-wife's "suspected cohabitation status" and sign the PSA. Defendant also argues that he executed the PSA under duress, because his choice to sign it was driven, at least in part, by his desire to spare emotional distress for a child of the marriage. We conclude these arguments are unavailing. On this record, defendant's personal reasons for executing the PSA do not change the consequences which flow from his informed choice. We defer to the trial court's finding that defendant entered into the PSA "knowingly, voluntarily, free of any duress, and with each party represented by legal counsel."

Finally, defendant's N.J.S.A. 2A:34-23 argument appears to be grounded in the theory that the LDA terms contained in the PSA expired on May 24, 2024, the date the parties anticipated that he would retire. According to defendant's theory, once the PSA expired, the parties could revisit alimony unburdened by paragraph 25 and guided by the statutory factors. Defendant argues that the court erred by continuing the alimony payments under the terms of the PSA without conducting an independent analysis of the facts in the context of N.J.S.A. 2A:34-23. We disagree with this interpretation of the agreement.

We revisit the parties' intent as found by the Family Part and we also examine the PSA.  There are no PSA terms which establish a definite termination date for LDA.  Instead, the agreement clearly shows that the parties intended to establish a termination <u>event</u>, not a <u>date</u>.  That event is defendant's retirement.  The agreement next contemplates what takes place if the event, defendant's retirement, does not take place <u>when</u> expected.  Under paragraph 25(g), "the issue of continuation of alimony" is "brought back for review" to the Family Part.  That is exactly what took place here.

The carefully drafted PSA, expressly agreed upon by the parties with the advice of experienced counsel, makes an independent analysis of the parties' relative circumstances under N.J.S.A. 2A:34-23 unnecessary.  Our courts generally do not make a better contract for the parties than they make for themselves.  <u>Quinn</u>, 225 N.J. at 45.  We decline defendant's invitation to do so here.

After our careful consideration of the record, including our review of the plain language in the PSA, we discern no basis to disturb the Family Part's factual findings and sensible interpretation of the PSA.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

8                                                                    A-3120-23