**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1925-24

THERESA SPERBER,

     Plaintiff-Respondent,

v.

FIORE C. PENNACHIO,

     Defendant-Appellant.

_____

Submitted December 10, 2025 – Decided April 2, 2026

Before Judges Currier and Jablonski.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0777-15.

Law Office of Steven P. Monaghan, LLC, attorneys for appellant (Kristin S. Pallonetti, on the briefs).

Theresa Sperber, self-represented respondent.

PER CURIAM

     Defendant Fiore C. Pennachio appeals a Family Part order requiring him to reimburse plaintiff Theresa Sperber for private school tuition payments she

made for their child, and imposing a continuing obligation upon him to contribute to future tuition expenses. For the reasons that follow, we reverse.

I.

Plaintiff and defendant married in 2011. Their child, Ophelia,[1] was born in 2012. The parties divorced on November 2, 2015. The divorce judgment incorporated a November 1, 2015, Marital Settlement Agreement ("MSA").

Under the MSA, the parties shared joint legal custody of their daughter with plaintiff serving as the parent of primary residence. They also agreed that all major decisions regarding their child's health, education, religion, and welfare were to be made jointly, and that neither parent could unilaterally bind the other financially for commitments to the child:

> The parties shall consult with each other with respect to the child's education, religious training, summer camp selection, illnesses and operations (except in emergencies, if not feasible), health, welfare, and other matters of similar importance affecting the child . . . .
>
> All major decisions concerning the child's health, education, safety and welfare shall be joint decisions.
>
> The parties shall make every reasonable effort to have all important decisions affecting the child made with the consent of both parents, but neither party shall

---

[1] We use a pseudonym for the minor child to protect her privacy. R. 1:38-3(d)(3).

make any commitment obligating the other financially for the child.

Defendant was originally obliged to pay $307 per week in child support. A cost-of-living adjustment later increased the weekly amount to $379.

The parties' co-parenting relationship became contentious--particularly regarding custody and parenting time. Subsequent litigation resulted in the execution of a comprehensive consent order (the "consent order") that governed custody, parenting time, and the attendant financial obligations of both parties. It read, in part:

> No major parental decisions regarding the child's health, education, religion, and general welfare, except in an emergency, shall be made unilaterally without the other parent's consent. Such decisions shall be discussed beforehand and mutually-agreed upon before any action is taken by either parent. In the event that the parties are unable to reach an agreement as to a major decision regarding the child's health, child care, education, religion, and general welfare, each party shall have the right to make application to the [c]ourt for determination as to that decision.

Disputes continued however.

At the beginning of the 2022-2023 academic year, plaintiff, without consulting defendant or obtaining his consent, enrolled Ophelia at Oak Hill Academy, a private school. Although plaintiff obtained scholarships and

financial aid, the tuition and affiliated costs were still substantial leaving approximately $8,000 due each year.

After 2022, defendant's parenting time dropped sharply. In 2022 and 2023, he spent only twenty-nine days with Ophelia during those years, and, as of the date of the application under scrutiny here, he had not exercised any scheduled time. Defendant claims the decline was attributable to plaintiff interfering with and obstructing his access. Plaintiff disagrees and argues defendant made very little effort to uphold his parenting responsibilities that he attributed to his mental health challenges and logistical difficulties.

Plaintiff's financial obligations increased—driven by Ophelia's enrollment and plaintiff's educational expenses other than tuition, combined with the attendant care costs following the decrease in defendant's parenting time. Plaintiff's earning potential was further limited after she suffered a traumatic brain injury in June 2021.

Plaintiff moved to modify the parties' financial obligations, seeking: (1) recalculated child support based on changed circumstances; (2) contributions by defendant toward Ophelia's tuition and associated school expenses (retroactive to January 2022); and (3) relief concerning medical and extracurricular costs. In opposition, defendant argued plaintiff could not

A-1925-24

unilaterally obligate him to pay for private school.  He also denied responsibility for tuition or extra-curricular expenses and sought to enforce the existing agreements.

The Family Part judge ordered defendant to pay fifty percent of Ophelia's tuition and affiliated costs for Ophelia's education retroactive to January 1, 2022.  Although the judge acknowledged there was neither an existing written agreement nor consent to enroll Ophelia in private school, she nevertheless ordered this relief because she was "moved by the significant external funding the plaintiff has obtained for the child . . . and does not wish to deprive the child of this continued educational opportunity."  No further explanation nor justification was provided to substantiate the decision.  The court did, however, reduce defendant's child support obligation.

This appeal followed.

## II.

Because of the Family Part's "special jurisdiction" and the judges' expertise, we generally defer to findings of fact made "when [they are] supported by adequate, substantial, credible evidence."  Cesare v. Cesare, 154 N.J. 394, 411-13 (1998); Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012).  However, we review any "legal conclusions and the application of

5

those conclusions to the facts" de novo. Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013). Since settlement agreements are contracts, we review these agreements de novo because of the legal questions presented. Quinn v. Quinn, 225 N.J. 34, 45 (2016) ("An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute."). "Accordingly, we pay no special deference to the Family Part's court's interpretation and look at the contract with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011).

"New Jersey has long espoused a policy favoring the use of consensual agreements to resolve marital controversies." Konzelman v. Konzelman, 158 N.J. 185, 193 (1999). To that end, "[v]oluntary agreements that address and reconcile conflicting interests of divorcing parties support our 'strong public policy favoring stability of arrangements' in matrimonial matters." Ibid. (quoting Smith v. Smith, 72 N.J. 350, 360 (1977)).

Matrimonial settlement agreements are governed by basic contract principles and, as such, courts should discern and implement the parties' intentions. J.B. v. W.B., 215 N.J. 305, 326 (2013). "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd

result." Quinn, 225 N.J. at 45. A court "should not rewrite a contract [n]or grant a better deal than that for which the parties expressly bargained." Ibid. "At the same time, 'the law grants particular leniency to agreements made in the domestic arena,' thus allowing 'judges greater discretion when interpreting [these] agreements.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)).

The MSA and the subsequent consent order are unequivocal and expressly state that both parents have an affirmative obligation to "consult with each other with respect to the child's education . . . ." Similarly, "all major decisions concerning the child's . . . education . . . shall be joint decisions." Moreover, "neither party shall make any commitment obligating the other financially for the child."

Here, plaintiff did not follow the terms of the MSA when she unilaterally enrolled Ophelia in private school without consulting with defendant or obtaining his consent. In ordering defendant to defray one-half the cost of Ophelia's tuition retroactive to January 2022, the Family Part judge condoned plaintiff's violation. Despite the clear and mutually agreed-upon terms of the MSA, we conclude the judge exceeded her authority by interpreting the plain and unambiguous language of the MSA contrary to its

express terms.  In doing so, she effectively created "a better deal than that for which the parties expressly bargained."  Quinn, 225 N.J. at 45.  Therefore, we reverse that portion of the order.

III.

Defendant next contends the Family Part judge erred when she ordered him to contribute fifty percent toward Ophelia's tuition moving forward.  Specifically, he asserts the Family Part "never found a significant and permanent change[] which would warrant [defendant] having to pay for private school tuition."  Under the MSA, both parents were required to discuss and mutually agree on any decision that could result in financial obligations before proceeding.  The only exception to this protocol is in cases of emergency.  Here, there was no evidence that Ophelia's life or health was in danger that would necessitate an emergency or unilateral decision.

For the reasons stated above, the court erred in requiring defendant to pay tuition costs as contravened by the parties' MSA and subsequent consent order.  Plaintiff must confer with defendant regarding future educational expenses.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1925-24